John W. Hooberry *et al. v.* Wm. G. Harding *et al.*

1. TRUSTS.    *Special or active.    Statute of Uses.*    Special or active trusts which require some act to be done or some duty to be performed, even if the act or duty be for the benefit of the *cestui que trust*, are not within the Statute of Uses, nor executed in the beneficiary, in this State, whether the statute be in force or not.

2. SAME.    *Rights of creditors.*    A judgment creditor whose execution has been returned unsatisfied, may by bill in chancery subject to the satisfaction of his debt the life estate of the *cestui que trust* in land, held under a special or active trust created in favor of the debtor by a third person, by will duly recorded or deed duly registered.

3. CASE IN JUDGMENT.    Real estate was devised by a mother, by will duly recorded, to trustees in trust, to permit her son, during life, to receive from the rents and profits, for his maintenance, such sums of money as he may deem proper, in such manner, however, as that the same shall not be liable for his debts, or for contracts made by him; and to permit him to exercise such control over the realty, in the renting thereof for one year at a time, as he may deem proper; in such manner, however, that the same shall not be liable for his debts and contracts; and in trust, after the death of the son, to convey the property to any child of the son then living, and if he die without such issue, then to convey to the heirs-at-law of the devisor.    *Held,* that the life estate of the son in the land could be subjected by bill in chancery to the claims of his creditors. •

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. W. F. COOPER, Ch.

MORRIS for complainant.

GAUT & SON for defendants.

COOKE, Sp. J., delivered the opinion of the court.

The questions involved in this record arise upon a proper construction of the will of Rachael Stump, deceased, which contained the following clause:

"I hereby give, devise and bequeath to my friends Wm. G. Harding and John Shute, jr., and my brother Philip Shute, and the survivors or survivor of them, and to the heirs of such survivor, his executors, etc., all the residue of my estate not necessary for the payment of my debts, whether real, personal or mixed, to have and to hold upon trust nevertheless, and to and for the uses, trusts and purposes following and none other, viz: That the said William G. Harding and John Shute, jr. and Philip Shute and the survivors or survivor of them, shall suffer and permit my son Philip S. Stump, for and during his life, to have and receive from the rents, issues and profits of said property, for his support and maintenance such sum or sums of money, or such amount of any other issues of said property (except the increase of negroes), as he, said Philip S., may deem proper; in such manner, however, as that the same shall not be liable to his debts, or for contracts made by him, and that they, and the survivors or survivor of them, shall suffer and permit the said Philip S. to have and to exercise such control over the slaves and real estate hereby bequeathed and devised, in the cultivation and renting of the one or hiring or working the others, for one year at a time, as he, said Philip S., may deem proper; in such manner, however, only that said Philip S. may derive a

support therefrom, and that the same shall not be liable for his debts or contracts; it being my intention to provide for said Philip S. out of the issues of said property, a sum sufficient for his support; of the amount of which sum said Philip S. is to be judge. And upon trust further, that said trustees and the survivors or survivor of them, their heirs, etc., after the death of the said Philip S., shall assign, transfer and convey said property, with its increase, to any child or children of the said Philip S. that may be living at his death, and should the said Philip S. die without issue living at the time of his death, then they or the survivors or survivor of them, their heirs, etc., shall assign, transfer and convey said property to those who may then be my heirs at law, in such proportion as they would have taken by the rules of descent. I hereby declare it to be my intention, by the bequest and devise to trustees above, to provide a support for my son Philip S. out of my estate, and not to vest in him any interest in said property which may or can be subjected to debts or contracts made or entered into by him. It is my further desire that said trustees should not be made liable for any waste or mismanagement of said estate, unless such waste or loss shall be occasioned by their own intentional fraud or misconduct."

Bloomstein recovered a judgment at law against the beneficiary, Philip S. Stump, had execution issued and levied upon his interest in said lands. To enjoin which the original bill was filed in this cause, alleging that the interest of said Philip S. in said land under

said will was an equitable interest merely and not subject to be taken in execution at law. The judgment creditor filed his answer as a cross-bill, by which he seeks to subject the interest of said Philip S., whatever it may be, in said lands and its issues to the satisfaction of his judgment, which he says was for necessary supplies furnished said Stump for the support of himself and family; and which is admitted, the cross-bill having been taken as confessed.

We are of opinion that the trust created under the above recited clauses of the will was an active or special one, and vested the legal title to said land in the trustees, and that the interest of the *cestui que trust* under it, being a mere equity, was not subject to levy and sale under execution at law. The chancellor so held; and we are content to rest this branch of the case upon the reasons stated and the authorities cited by him in the learned opinion which he delivered in deciding the case in the court below. He said: "Special or active trusts were never within the province of the Statute of Uses. These are trusts which require some act to be done, or some duty to be performed by the trustee, even if the act or duty be for the benefit of the *cestui que trust*. At an early day, it was held that the statute did not apply where lands are limited to trustees to receive and pay over the rents and profits to such and such persons, for here the lands must remain in the trustees to answer such purposes: *Symson* v. *Turner*, 1 Eq. Cas. Abr., 383, pl. 1, in note."

"So, where the trust was out of the rents, after deducting rates, taxes, repairs and expenses, to pay such

clear sum as remained, to a person named, during his life, and after his death to the use of the heirs male of his body: *Shapland* v. *Smith*, 1 Bro. C. C., 75."

"So, where the testator devised that the trustees should yearly, during the life of his son, receive the rents of the land to be applied to the maintenance of the son: *Sylvester* v. *Wilson*, 2 Durnf. & E;, 444. 'Whether the trustees,' says Judge McKinney, 'do or do not take the legal estate depends chiefly on the fact whether the testator has imposed upon the trustees any trust or duty the performance of which requires that the estate should be vested in them: *Ellis* v. *Fisher*, 3 Sneed, 234. And see *Jones* v. *Lord Say* and *Seale*, 1 Eq. Cas. Abr., 383, pl. 4; *Bagshaw* v. *Spencer*, 2 Atk., 583; *Wright* v. *Pearson*, 1 Eden, 125; *Stanly* v. *Colt*, 5 Wall., 168; *Porter* v. *Doby*, 2 Rich. Eq., 53; *Mott* v. *Buxton*, 7 Ves., 201; *Aikin* v. *Smith*, 1 Sneed, 309.

'Therefore,' says Mr. Perry, 'if any agency, duty, or power be imposed on the trustees, as by a limitation to the trustee and his heirs to pay the rents or convey the estate, or to preserve contingent remainders, in all of these and in other like cases, the operation of the statute is excluded and the trusts or uses remain mere equitable estates.' 'So,' he adds, 'if the trustee is to exercise any discretion in the management of the estate, in the investment of the proceeds or the principal, or in the application of the increase, or if the purpose of the trust is to protect the estate for a given time, or until the death of some one, or until division': Perry on Tr., sec. 305, citing numerous cases."

Hooberry *v.* Harding.

"Again, he says, 'although the direction may be for the trustees to *permit and suffer* another person to receive the rents, yet if any duty is imposed on the trustees expressly *or by implication*, the legal estate will remain in them unaffected by the statute': Sec. 307. His illustrations are, where the direction is to permit A to receive the net rents, (*Barker* v. *Greenwood*, 4 Mee. & W., 421), or the clear rents, (*White* v. *Parker*, 1 Bing., N. C., 573), and where the direction to permit A to receive the rents is coupled with a devise in trust to preserve contingent remainders: *Briscoe* v. *Perkins*, 1 Ves. & Bea., 485. And it is upon this ground that the trustees always take the estate where the trust is in favor of a married woman, even if it be to permit her to receive the rents or use the property: *Horton* v. *Horton*, 7 Term Rep., 652; *Hawkins* v. *Luscombe*, 2 Swanst., 376, 391; *Beaufort* v. *Collier*, 7 Hum., 487.

"The rule is the same in this State, under the decisions of our courts construing such trusts, although the statute of uses be not in force. The trustee takes exactly that quantity of interest which the purposes of the trust require: *Ellis* v. *Fisher*, 3 Sneed, 234; *Murdock* v. *Williams*, 7 Cold., 612; *Harding* v. *St. Louis Life Ins. Co.*, 2 Tenn. Ch., 468."

"The will before us may have intended to create the trust estate for the purpose of preserving the contingent remainders, and securing the actual conveyances of the property, upon the happening of the contingency, to those entitled in remainder. These are purposes which would suffice to vest the trustees with title, although not essential, perhaps, to the effectuating

of those objects, under our system of laws.   For the
ultimate remainder might be good as an executory
devise, and the legal title might pass upon the expi-
ration of the prior estate without actual conveyance :
*Aiken* v. *Smith*, 1 Sneed, 309.   The fact that these re-
sults might follow without the interposition of trustees
would not, however, affect the character of the trust
whether active or passive, if the testatrix chose to
resort to the appointment of trustees.   Be this as it
may, the intention of the testatrix to clothe the trus-
tees with some special trust, in relation to the property,
pending the life estate is beyond question.   One pur-
pose had in view was to protect the rents and profits
of the land from the claims of the creditors of the
beneficiary for life.   Whether that purpose was legal
or not may admit of doubt; but the purpose was
certain.   The will, moreover, draws a distinction be-
tween the rents which the beneficiary is to receive,
and the control he is to be allowed to exercise over
the land itself in the cultivation and renting thereof.
If the trustees permit him to cultivate, or rent, it is
with the restriction that it shall be 'only for one year
at a time.'   If they retain the control, then the benefi-
ciary may receive from them such sum as he may
deem proper for his maintenance and support.   Out-
side of the legal effect of the intention of the testra-
trix upon the interest of the beneficiary and upon the
rights of the creditors to reach that interest, the in-
tention is, I think, clear.   In other words, the will
imposes upon the trustees, "either expressly or by im-
plication," the active duty of managing the estate or

regulating his control and use of it.    This may have
been solely with a view to protect the incomes or the
property from the creditors of the beneficiary, or in
connection therewith to guard the property against the
improvidence of the beneficiary, and to secure it intact
and in good condition for the contingent remainder-
men.    If the former object be nugatory because illegal,
the latter object is free from blame, and the law would
presume was intended.    I am clearly of opinion, there-
fore, that the trusts of the will are special, vested the
legal title in the trustees, and may be enforced in this
court to the extent of securing the payment of taxes
and keeping the property in reasonable repair:"    See 3
Tenn. Ch., 677.    Many additional authorities to the
same effect might be cited, but these are sufficient,
and this reasoning we think is conclusive upon this
branch of the case.    There can be no doubt as to
the legal principles announced.    The only difference
that can arise is as to the application of them to a
given state of facts.

This case is easily distinguishable from the case of
*Turley* v. *Massengale*, 7 Lea, 353, so far as this ques-
tion is involved.    In that case the entire fee simple
had, by the body of the will, been devised to the son
of the testator.    Afterwards, by a codicil it was pro-
vided that all the property of every kind devised to
the son in the foregoing will, should be vested in a
trustee *for the use and benefit of the son,* and no part
of the same to be subject to execution or other legal
process for any debt or liability he might have
contracted, or might thereafter contract.    Nor was

he to sell the same or any part thereof; but might use the rents and profits for his support and that of his mother, but should have the right to dispose of the property by last will and testament. In that case there was absolutely no active duty for the trustee to perform, nor any supervision of the estate imposed on him. The authority to the *cestui que trust* to take the rents during his life and dispose of the estate by will at his death, was devised directly from the testator himself. The only conceivable object for which the trustee was interposed was to protect the estate from the creditors of the beneficiary and to restrain its alienation. Both of which were illegal and void. Hence in that case it was correctly decided that the trust was merely passive, and the legal title vested directly in the *cestui que trust.*

The chancellor, however, was further of opinion that under the provisions of the act of 1832, sec. 1, and the proviso carried into the Code, sec. 4283, inasmuch as the trust was created by and the interest in the property held by the *cestui que trust* proceeded from another and was declared by will duly recorded, that a court of equity had no jurisdiction to subject the interest of the beneficiary to the payment of his debt, and that there was no power existing anywhere, either at law or equity, to subject it, and hence dismissed the cross-bill. Since this case was decided in the court below, this precise question came before this court in the case of *Turley* v. *Massengale,* above referred to, 7 Lea, 353, and after having been ably argued, upon full consideration it was determined that a court

Hooberry *v.* Harding.

of equity had power to subject an estate so held to the satisfaction of the debts of the *cestui que trust;* that the jurisdiction existed independent of the act of 1832, and that sec. 4283 of the Code had no application to a case like the present. Whatever doubts or differences may have existed before, they were settled by this decision and the question, in this State, put to rest, and we are not disposed now to disturb it.

The decree of the chancellor, therefore, dismissing the cross-bill, must be reversed, and a decree entered subjecting the life estate of the beneficiary, Philip S. Stump, to the satisfaction of the judgment against him.

The costs of the cause in this court, as well as the chancery court, will be paid out of the fund arising from the subjection of the life interest.